UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE A. BENTON,

        Plaintiff(s),        CASE NUMBER: 06-12375
                                        HONORABLE VICTORIA A. ROBERTS
v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant(s).
_____/

## ORDER

**I. INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary Judgment. Magistrate Judge Steven D. Pepe recommends that the Court DENY Defendant's motion, GRANT Plaintiff's motion, and REMAND this matter for further administrative proceedings. The Court **ADOPTS** Magistrate Pepe's recommendation.

**II. PROCEDURAL HISTORY AND FACTS**

Magistrate Pepe adequately summarizes the relevant facts and procedural history. His summary is incorporated here.

**III. STANDARD OF REVIEW**

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This Court must review the ALJ's decision to determine whether it is supported by "substantial evidence." "Substantial evidence is more than a

1

scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This standard presupposes that there is a "zone of choice" within which the Administrative Law Judge ("ALJ") may make a decision without being reversed. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, nor make credibility determinations. *Id.*

**IV.    ARGUMENTS**

There are five factors that the Social Security Administration uses to determine eligibility for benefits. Plaintiff has the burden on the first four and must establish that: (1) she is not presently engaged in gainful employment; and (2) she suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; or (4) she did not have the "residual functional capacity" ("RFC") to perform past work. *Jones v. Comm'r of Soc. Security*, 336 F.3d 469, 474 (6th Cir. 2003).

If the Plaintiff satisfies her burden, the burden shifts to the Commissioner for the

fifth factor to show that there is other work available in the economy that the claimant can perform. 20 C.F.R. §§ 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id.*

### A. Plaintiff's Claims

Plaintiff Joyce Benton seeks disability benefits from March 1, 2002, claiming disability due to depression and arthritis. Plaintiff's past work experience includes employment as a church camp counselor, prep cook, and home health care aide.

Plaintiff's minor problems include: (1) high blood pressure; (2) sharp chest pains once a week; and (3) weight gain. Plaintiff testified that she cannot tell when her blood pressure is high. Tr. 221. In addition, her chest pains decrease in frequency with medication. Tr. 222. Plaintiff also stated that although her weight gain might make it harder for her to walk long distances, it does not exacerbate her pain. Tr. 226.

Plaintiff claims it is her knees and ankles that prevent her from working. Plaintiff began having problems with her knees in the early 1980s. Tr. 207. Plaintiff claims her knees feel the best in the morning because although they are "stiff," she is not in a lot of pain. When she starts moving around the house, her knees begin to loosen up and she is "fine." Plaintiff asserts that her knees begin to hurt by noontime. Plaintiff claims that although they do not swell to the point where she cannot walk--like they did in 2002-- she has pain in both knees when she walks. Plaintiff also claims that her knees hurt if

3

she sits or stands too long. Tr. 214-215.

Plaintiff's ankles started swelling between 2002-2003. Tr. 208. Plaintiff asserts that the pain in her ankles is worse now than in 2002, and she is in the utmost pain when doing a lot of walking. For example, Plaintiff claims that after accompanying a friend to the grocery store, she can barely make it in the house. However, Plaintiff testified that if she stays off her feet or can sit down and get up as needed, the pain is not as bad. Tr. 213-214. Further, Plaintiff stated her ankles feel better when they are elevated. Tr. 224-225.

Despite the pain in her knees and ankles, Plaintiff reported that she can: (1) groom; (2) dress; (3) bathe; (4) drive; (5) do all the necessary housework; (6) care for her son; (7) participate in extracurricular activities, including reading, canning, cooking, and gardening; (8) lift a gallon of milk; (9) walk about a quarter of a mile to and from the bus stop (although it hurts); and (10) attend church every Sunday, but she must get up and move around as necessary. Tr. 213-216, 219, 229.

Plaintiff also suffers from depression. However, she stated she is unsure if her depression affects her ability to work. Tr. 208. In addition, Plaintiff noticed a decrease in depression since she stopped using cocaine regularly. Tr. 221.

### B. Magistrate's Recommendation

To determine the range of suitable alternative jobs available for persons with Plaintiff's limitations, the ALJ asked the VE to imagine an individual of Plaintiff's age and education who cannot lift more than 20 pounds; frequently carries 10 pounds and balances; stands and walks up to six hours per day; occasionally stoops, kneels, crouches, and crawls; cannot climb ropes, ladders, or scaffolds; and is restricted to

4

simple, routine, repetitive tasks.  Based upon this hypothetical, the VE testified that such an individual could work in a light occupation as a classifier separator (1,400 jobs regionally and 68,000 nationally), bar attendant (2,200 jobs regionally and 96,000 nationally), or an assembler of small products (2,000 jobs regionally and 51,000 nationally).  Tr. 234-236.

When a sit/stand option was added to the hypothetical, the classifier separator jobs reduced to 1,000 regionally and 51,000 nationally, and the bar attendant job was eliminated.  However, the VE testified that an individual with such a limitation could be a bench assembler at either the light level (2,000 jobs regionally and 68,000 nationally) or sedentary level (1,000 jobs regionally and 38,000 nationally).  Tr. 236-237.

The hypothetical was modified to include only jobs on the sedentary level.  At this level, the limitations include:  sitting six hours, standing and walking two hours a day, and lifting a maximum of 10 pounds.  The VE testified that such an individual could work as a bench assembler at the sedentary level (1,000 jobs regionally).  The VE stated that such individual could also work as a parking lot attendant (1,200 jobs regionally and 45,000 nationally), surveillance system monitor (1,500 jobs regionally and 45,000 nationally), or cashier II (1,500 jobs regionally and 70,000 nationally).  The VE further stated that an individual limited as sedentary could not perform any of Plaintiff's prior jobs.  Tr. 237-238.

Plaintiff's attorney then questioned the VE about the amount of time an individual needs to be on task to perform the jobs mentioned.  The VE testified that the required concentration level varies, but noted that all of the occupations are low level.  This means they do not require a high level of attention, focus, or thought because they are

very repetitive. However, the VE stated that some jobs could withstand better drifting in concentration than others. For example, surveillance jobs are less repetitive so they require more attention. And, assembly jobs require more focus than a job as a parking lot attendant. However, the VE was unable to provide the percentage of time that an assembler would need to concentrate to complete the job. The VE stated she always had a problem with that figure because those jobs are so routine, but still require a certain amount of attention. According to the VE, "[i]f somebody is completely zoned out[,] they're not going to be able to do the work period." But, "[d]oing something over and over and over . . . can become so routine that the person could be off thinking about what they're going to do this weekend as long as they're watching what they're doing." Tr. 238A-239. The VE eventually reported that an employee would probably need to be on task 90% of the time to perform a production job, but it depends on how fast they work. She also stated that a security monitor would have to be on task 90% of the time. Tr. 240. With regard to a cashier position, the VE testified that an employee must be on task when somebody needs to be cashed out, and employers would not tolerate less than 90% attentiveness. Tr. 240-241.

When Plaintiff's attorney provided the VE with a hypothetical claimant who is on task 75% of the time and off task 25% of the time because they are either in pain, in the back room putting their legs up, or "goofing off," the VE could not provide a definite answer regarding whether this individual could perform the jobs mentioned. This was because people work at different speeds, and employers may be more forgiving depending upon how well an employee works while on task. Plaintiff's attorney then provided a hypothetical claimant who had to elevate her ankles above her heart three

6

times a day at unpredictable times and asked the VE if that would be work preclusive. The VE testified that this situation would preclude jobs unless such individual could elevate her legs during breaks and on lunch. Tr. 241-242.

Upon an evaluation of the evidence, the ALJ determined that Plaintiff's arthritis, major depression, generalized anxiety disorder, polysubstance dependence, and obesity are "severe" based on the requirements in 20 C.F.R. §§ 404.1520(c) and 416.920(c). Nonetheless, the ALJ found that the medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Hence, the ALJ assessed Plaintiff's RFC and determined that her ability to perform activities of daily living and to maintain social functioning are only mildly limited by her mental impairments. Further, her ability to maintain concentration, persistence, and pace is moderately limited primarily by her medications. Based on these determinations, the ALJ found that Plaintiff retains the RFC for a restricted range of sedentary work and is limited to simple, routine, repetitive work. He concluded Plaintiff can lift/carry, push/pull 10 pounds occasionally; stand/walk two hours in an eight hour work day; and sit six hours in an eight hour work day. She should have the opportunity to alternate between sitting and standing at will; but can never climb ladders, ropes, or scaffolds. She can occasionally climb stairs, stoop, kneel, crouch, and crawl; and can frequently balance. The ALJ stated that although Plaintiff's limitations do not allow her to perform a full range of sedentary work, there are a significant number of jobs in the national economy that she could perform, including work as a bench assembler, parking lot attendant, surveillance system monitor, and cashier II. Hence, the ALJ concluded that Plaintiff was not under a "disability" as

7

defined in the Social Security Act.

The Magistrate recommends remand. Specifically, he states that the ALJ found that Plaintiff had moderate deficiencies in concentration, persistence, and pace, but failed to include this limitation in the hypothetical. The Magistrate states it is not clear whether the limitation to "simple, routine, repetitive" work fully incorporates this finding. According to the Magistrate, "[t]here seem[s] to be two components to having moderate problems in concentration. One deals with the frequency of how often one cannot concentrate. The other deals with the level of sophistication or intensity of the work that can be done with the concentration limitation." The Magistrate asserts that the hypothetical encompasses the later effects of concentration problems by limiting Plaintiff to only simple, repetitive tasks, but does not specifically address the frequency of how often a worker would be unable to concentrate.

The Magistrate recognized that Plaintiff did not testify regarding any limitation in concentration, persistence, or pace; did not articulate a theory; nor point to any evidence to support any greater restrictions than those prescribed by the ALJ in the hypothetical question. The Magistrate further recognized that the administrative record lacks objective medical findings or treatment records that would support a finding of impairment in concentration, persistence, or pace. Despite this lack of evidence, the Magistrate stated the ALJ still found that Plaintiff had moderate deficiencies in concentration, persistence, and pace. Hence, according to the Magistrate, the hypothetical question was flawed because it failed to include these deficiencies.

In his analysis, the Magistrate reviewed *Bankston v. Comm'r of Soc. Security*, 127 F.Supp.2d 820 (E.D. Mich. 2000), which Plaintiff relied upon. In *Bankston*, the

Court stated that "[a] reasonable interpretation of 20 C.F.R. §404.1520a indicates that a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." *Bankston*, 127 F.Supp.2d at 826. The *Bankston* Court held that plaintiff's concentration, persistence, or pace deficiencies preclude him from performing even sedentary work, thus making him disabled under the Social Security Act. *Id.* at 827 (citing *Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992) (finding that a person who often suffers from deficiencies in concentration, persistence, or pace is disabled under the Statute)).

The Magistrate noted that the *Bankston* decision was questioned as contrary to the Commissioner's Psychiatric Review Technique form instructions and the principle of deference to an administrative agency's construction of its own regulations. *See* Report and Recommendation accepted by Chief Judge Rice in *Ogden v. Apfel*, Case No. c-3-00448 (S.D. Ohio June 11, 2001) (suggesting that *Bankston* is simply wrong because it ignores the Commissioner's interpretation of "often" in the regulations). Nevertheless, the Magistrate concluded that *Bankston* correctly notes that a hypothetical question must consider the severity--including the degree and/or frequency--of the claimant's concentration problems.

On the other hand, the Magistrate disagreed with Plaintiff's reliance on *Bankston* for the proposition that the ALJ was required to apply a formulaic 50% reduction in concentration to Plaintiff based solely on his finding of a moderate limitation in concentration, persistence, and pace. The Magistrate stated this argument overlooks the change in the regulation and corresponding form that now measures limitations in concentration on a five-point scale instead of in terms of frequency: (1) none; (2) mild;

9

(3) moderate; (4) marked; and (5) extreme. See 20 C.F.R. §404.1520a(c)(4). The Magistrate also stated Plaintiff's argument overlooks more recent case law.

The Magistrate cited *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001) for the idea that under current law, a specific limitation does not have to be included in a hypothetical whenever an ALJ makes a finding that a claimant "often" experiences deficiencies in concentration, persistence, or pace. The ALJ in *Smith* failed to include the instruction that the claimant "often" suffers deficiencies in concentration, persistence, or pace in the hypothetical to the VE. *Smith*, 307 F.3d at 379. The Sixth Circuit held this was not error because the ALJ developed a complete and accurate assessment of the claimant's mental impairment. Specifically, the ALJ relied on the testimony of four physicians who characterized the claimant's concentration problems as minimal or negligible and incorporated restrictions against quotas, complexity, and stress into his hypothetical to the VE. *Id.* The Court concluded that the ALJ's hypothetical "accurately sets forth the plaintiff's physical and mental impairments." See *id.* at 378-79.

The Magistrate contends that the hypothetical question in Plaintiff's case does not accurately set forth Plaintiff's mental impairments. According to the Magistrate, the ALJ in Plaintiff's case failed to eliminate the stress of production quotas–which likely accompany the bench assembler, surveillance system monitor, and cashier positions identified by the VE. Further, the Magistrate reasoned that because a moderate limitation in concentration constitutes a concentration reduction of at least 10% and considering that the VE noted that no more than a 10% reduction in performance could be tolerated for many of the jobs, if the concentration limitation was added to the

hypothetical, the following would occur: (1) all assembly and surveillance jobs would be eliminated; (2) the cashier jobs would likely be eliminated; and (3) the parking lot attendant jobs could be eliminated because they require light cashier-type work. Hence, the Magistrate concluded that the VE's response to the hypothetical question cannot be substantial evidence under 42 U.S.C. §405(g) to support the ALJ's determination that Plaintiff was not disabled.

### C. Defendant's Objection

Defendant asserts the case should not be remanded because the ALJ's opinion that Plaintiff was moderately limited in concentration does not require a finding that she is off-task for any certain percentage of the time. Defendant states that a moderate limitation might involve periods of greater and lesser concentration ability in some cases, but the ALJ in Plaintiff's case did not intend his finding to refer to frequency.

In support of her argument, Defendant relies on the fact that the ALJ noted that Plaintiff's concentration was moderately limited "primarily by her medication." Defendant also relies on the fact that the ALJ did not include in his RFC finding any frequency limitation on concentration. Defendant asserts that the ALJ was not interpreting the opinion of a physician or any other medical professional that Plaintiff had a "moderate" concentration limitation. Instead, Defendant states the issue is what constitutes a "moderate" concentration limitation according to the ALJ himself. Defendant states that his position is further supported by the VE's confusion when Plaintiff's attorney attempted to quantify Plaintiff's concentration limitation based on a percentage analysis.

### D. Plaintiff's Response

11

Plaintiff contends the case should be remanded for further proceedings because the hypothetical was flawed. Plaintiff argues that an RFC limitation to "simple, routine, and repetitive work" fails to accurately describe a claimant who has Depression and Anxiety Disorder and a moderate limitation in her ability to concentrate, persist, and keep pace. In support of her argument, Plaintiff cites *Howard v. Commissioner of Soc. Security*, 276 F.3d 235, 240 (6th Cir. 2002) (holding that a RFC finding of a "need to perform work of a simple and relatively nonstressful nature" is not supported by substantial evidence when among other things, the RFC excludes the fact that the claimant has major depressive disorder) and *Walker v. Barnhart*, 258 F.Supp.2d 693, 701 (E.D. Mich. 2003) (finding that the ALJ's instruction to the VE that the hypothetical claimant could perform only simple, unskilled work did not accommodate Plaintiff's depressive disorder).

Plaintiff also contends that the Magistrate provided deference to the Commissioner in his analysis because mathematically, someone who is "moderately" restricted in her concentration would be impaired 50% of the time, but the Magistrate indicated that it would be "hard to reasonably accept 'moderate' meaning anything less than 20-30% of the time at work."

**V.    ANALYSIS**

The Sixth Circuit held that an ALJ's failure to include in a hypothetical question a finding that a claimant "often" has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). "When the ALJ makes a . . . finding that the claimant 'often' has problems with concentration, but does

12

not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's concentration limitations." *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005).

Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations. "Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id.* The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence, and pace for this Court to determine the number of jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question. See *id.* at 930-31.

Further, two Courts in this circuit held that deficiencies of concentration, persistence, and pace must be included in the hypothetical question. In *Thomczek v. Chater*, 1996 WL 426247 (E.D. Mich. Jan. 5, 1996), plaintiff "often" suffered from deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. The ALJ failed to include this deficiency in the hypothetical posed to the VE. The Magistrate found that the hypothetical was flawed, and the VE's testimony concerning the availability of jobs did not constitute substantial evidence. On appeal, the Commissioner argued that any deficiency in the ALJ's questions was cured by the

totality of the VE's testimony because the VE testified that "[i]f the pain is so severe that it depress [sic] to the point where she is isolated, incapable of concentrating and focusing, then she couldn't perform the task." *Id.* at *2. Rejecting the Commissioner's argument, the Court held that because the VE's one reference to concentration problems does not deal with plaintiff's specific situation, "[t]here must be either a supported finding that [plaintiff] does not often suffer from concentration lapses or the hypothetical given to the VE must include this aspect of [plaintiff's] condition." *Id.* at *3.

In *Herriman v. Apfel*, 2000 WL 246598 (E.D. Mich. Feb. 11, 2000), the Court remanded the matter because the VE's testimony did not take into account plaintiff's deficiencies in concentration. The Court stated, "[u]pon remand, the ALJ should determine the effect upon the VE's opinion if he or she were to consider that [sic] fact that plaintiff often has deficiencies in concentration." *Id.* at *3.

"An improper hypothetical question cannot serve as substantial evidence under §405(g), and can result in a remand or reversal." *Edwards*, 383 F.Supp.2d at 931 (citing *Whitmore v. Bowen*, 785 F.2d 262, 263-64 (8th Cir. 1986)).

This case should be remanded to determine whether jobs exist consistent with Plaintiff's limitations in concentration.

## VI.    CONCLUSION

The Court **ADOPTS** the Magistrate's R&R and **REMANDS** this matter to the Commissioner for further administrative action concerning the impact Plaintiff's moderate limitations in concentration, persistence, and pace have on her ability to perform substantial gainful activity.

**IT IS ORDERED.**

                                                    /s/ Victoria A. Roberts
                                                  Victoria A. Roberts
                                                  United States District Judge

Dated: September 10, 2007